LEWIS C. PARKER, APPELLEE, V. FRANK H. PARKER, APPELLANT.

FILED MARCH 7, 1907. No. 14,704.

Witnesses: CONFIDENTIAL COMMUNICATIONS. The provisions of .the code against the disclosure of confidential communications may be waived by the party in whose favor they were enacted, and the privilege of waiver extends to the personal representative of a deceased person.

APPEAL from the district court for Gage county: WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*J. E. Cobbey, G. M. Johnston* and *Rinaker & Bibb,* for appellant.

*E. O. Kretsinger, F. M. Davis* and *T. J. Doyle, contra.*

JACKSON, C.

The contestant appeals from the judgment of the district court confirming the probate of a will. The principal contention is as to the sufficiency of the evidence to sustain the verdict and judgment.

The testator left two sons surviving her. She bequeathed her estate to an infant daughter of one son, the proponent. The contest is put upon the ground of undue influence and fraud of the proponent, and that the testator was incompetent. The evidence is voluminous, and includes the testimony of 60 or more witnesses, and it would be idle to review the testimony of each witness at length. The will was executed on the 22d day of September, 1900. The testimony of Dr. W. Frank Lee, a witness on behalf of the proponent, fairly reflects the evidence offered in support of the will: He had known the testator for about ten years. He was treating her at about the time the will was executed and until near the time of her death, which occurred in February following, and as to her condition said that she complained of neuralgia in her arm and shoulder, and connected with that slight spasms at times in the muscles of her neck and throat, which somewhat affected her articulation. Other than those local physical ailments she was as well physically as any old lady of her age; was able to converse and carry on an intelligent conversation, and mentally could direct her household affairs and make her wants known; that she was able to transact business and to make a will disposing of her estate on September 22, 1900.

In that respect he was corroborated by two other physicians, who saw and treated her at about that time, household servants, neighbors and friends who frequently were at her home. On the other hand, the evidence on behalf of the contestant seems to be fully as positive that at the time of the execution of the will the testator was suffering from a disordered mind and weakened physical condition, which incapacitated her for the transaction of any business and rendered her entirely incompetent to make an intelligent disposition of her property. The records of this court disclose this to be the second trial in the district court, the verdict and judgment on both occasions sustaining the will. It was stated in the oral argument that the proceedings in the probabte court resulted in a similar judgment. Prominent counsel on either side have tried the case with the zeal and earnestness usually accompanying litigation of this character.

We have carefully examined the 900 pages of evidence contained in the record and are not prepared to say that the judgment is not supported by the weight of the evidence or that a different conclusion would be justified. Nor do we think that the will, under the circumstances, was an unnatural one. The estate descended originally from the father of the contesting parties and had been, to a very large extent, divided between the two sons. That portion received by the contestant is estimated to have been of the value of $40,000, misfortune had resulted in the loss of the share of the proponent, and it is quite natural that the mother should have a desire to provide for the family of her less fortunate son. There were cogent reasons why she could not do so by leaving the residue of the estate to him direct. The course pursued by her was, perhaps, the most feasible one to accomplish that purpose.

Some expert evidence on behalf of the contestant tends to prove that the signature to the will is not the genuine signature of the testator. On the other hand, four witnesses present at the time the will was executed testified

that the testator procured the will to be read in their presence; that she stated that it was her last will and testament and was just as she desired it to be; that she went to her desk, took the pen in her own hand and affixed her signature. The original will is attached to the bill of exceptions, and signatures admitted to be the genuine signatures of the testator were admitted in evidence. All of the evidence as to the genuineness of the signature was taken in open court before the judge and jury, the finding necessarily includes the genuineness of the signature and with that finding we are content.

On behalf of the proponent there was offered in evidence and received the testimony of the physicians who attended the testator in her last sickness, and the attorney who prepared the will. This testimony, it is insisted on behalf of the contestant, was a disclosure of privileged communications, and was incompetent. We have heretofore held that the provisions of our statute with reference to the disclosures of privileged communications were for the benefit of the one who called the professional man, and might by him be waived. *Brown v. Brown,* 77 Neb. 125. This waiver may be by the representative of the deceased. *Sovereign Camp W. O. W. v. Grandon,* 64 Neb. 39.

It is charged in the objections to the probate of the will that it was obtained by undue and improper influence on the part of Lewis C. Parker (proponent), and that said pretended will was obtained by the said Lewis C. Parker by false and fraudulent representations. In submitting the case to the jury they were advised that there were three questions for them to determine: First, was the will properly executed; second, was Mrs. Parker competent; third, was the will procured by fraud and undue influence upon the part of Lewis C. Parker exercised over and upon Mrs. Parker at the time of its date and signature. Objections are made to the third question on the ground that fraud and undue influence are connected together in the conjunctive, and that it required the jury

to find that the fraud and undue influence were exercised by the proponent at the time the will was executed, whereas the charge rested upon a series of events occurring prior to the time of the execution of the will. It is probable that the interrogatory would have been in better form had the terms "fraud and undue influence" been marked by an alternative or the use of the word or, but we do not think the jury were misled. As to the contention that the jury must find that the fraud and undue influence were exercised by the proponent at the time the will was executed, we think the language employed entirely proper; certainly the testator must have been influenced at the time the will was executed to make the objection effective.

We find no reversible error in the record, and recommend that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.